PD-0075-15

RECEIVED IN
COURT OF CRIMINAL APPEALS

January 22, 2015

ABEL ACOSTA, CLERK

NO.  PD-_____

IN THE
COURT OF CRIMINAL APPEALS

---

HECTOR MANUEL GONZALEZ, JR.,
Appellant,

v.

THE STATE OF TEXAS,
Appellee.

---

On Discretionary Review From An Opinion Of The
Court of Appeals For The Eleventh Supreme Judicial
District Of Texas In Cause No. 11-12-00360-CR

---

APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

---

THOMAS S. MORGAN
1902 W. ILLINOIS
MIDLAND, TEXAS 79701
(432) 683-2703
(432) 684-7314 FAX NUMBER
MANDYC@TOMSMORGAN.COM
STATE BAR I.D. NO. 14452500
ATTORNEY FOR APPELLANT

i

NO. PD_____

IN THE
COURT OF CRIMINAL APPEALS

---

HECTOR MANUEL GONZALEZ, JR.,
Appellant,

v.

THE STATE OF TEXAS,
Appellee.

---

On Discretionary Review From An Opinion Of the
Court of Appeals For The Eleventh Supreme Judicial
District of Texas In Cause No. 11-12-00360-CR

---

PETITION FOR DISCRETIONARY REVIEW

TO THE HONORABLE JUDGES OF THE COURT OF CRIMINAL APPEALS:

COMES NOW the Appellant, HECTOR MANUEL GONZALEZ, JR., by and

through his attorney of record, Thomas S. Morgan, who files this his Petition For

Discretionary Review, wherein he respectfully urges this Honorable Court to grant Discretionary Review of the above styled and numbered cause pursuant to the rules of this Court, and in support thereof, the Appellant would respectfully show this Honorable Court as follows:

# TABLE OF CONTENTS

Page

Index of Authorities...................................................................................... iv

Statement Regarding Oral Argument ......................................................... 1

Statement of the Case.................................................................................... 2

Statement of Procedural History ................................................................. 2

First Ground For Review............................................................................... 3, 5

    WHETHER APPELLANT RECEIVED THE INEFFECTIVE
    ASSISTANCE OF COUNSEL BECAUSE OF HIS TRIAL
    ATTORNEY'S FAILURE TO CALL CRITICAL FACT
    WITNESSES AT GUILT/INNOCENCE

Second Ground For Review ......................................................................... 3, 13

    WHETHER REVERSIBLE ERROR OCCURRED
    BECAUSE THE PROSECUTOR STATED, DURING VOIR
    DIRE, THAT A PSYCHOLOGIST, WHOM HE NAMED,
    WAS GOING TO TESTIFY REGARDING CHILD
    SEXUAL ABUSE VICTIMS GIVING DELAYED
    OUTCRIES, AND COMPOUNDED THE ERROR WHEN
    NOT ONLY SUCH WITNESS WAS BARRED FROM
    TESTIFYING, INJECTED PERSONAL OPINION, AND
    THE PROSECUTOR FURTHER STATED, DURING
    OPENING STATEMENT, THAT HE REGRETTED THE
    JURY COULD NOT HEAR FROM THE PSYCHOLOGIST
    REGARDING JUSTIFICATION FOR THE DELAYED
    OUTCRY AS SUCH PSYCHOLOGIST COULD HAVE
    ENLIGHTENED THE JURY

Third Ground For Review............................................................................ 3, 18

    WHETHER REVERSIBLE ERROR OCCURRED BECAUSE
    THE PROSECUTING ATTORNEY, DURING VOIR DIRE,

IMPROPERLY ASKED COMMITMENT QUESTIONS TO
THE MEMBERS OF THE JURY PANEL

Fourth Ground for Review................................................................. 3, 24

WHETHER APPELLANT'S TRIAL COUNSEL PROVIDED
INEFFECTIVE ASSISTANCE BY FAILING TO OBJECT
TO THE PROSECUTOR'S STATEMENTS, DURING VOIR
DIRE AS WELL AS OPENING STATEMENT, SET OUT IN
POINT OF ERROR NUMBER ONE

First Reason for Review ................................................................. 4

APPELLANT RECEIVED THE INEFFECTIVE ASSISTANCE
OF COUNSEL BECAUSE OF HIS TRIAL ATTORNEY'S
FAILURE TO CALL CRITICAL FACT WITNESSES AT
GUILT/INNOCENCE

Second Reason for Review ................................................................. 4

REVERSIBLE ERROR OCCURRED BECAUSE THE
PROSECUTOR STATED, DURING VOIR DIRE, THAT A
PSYCHOLOGIST, WHOM HE NAMED, WAS GOING TO
TESTIFY REGARDING CHILD SEXUAL ABUSE
VICTIMS GIVING DELAYED OUTCRIES, AND
COMPOUNDED THE ERROR WHEN NOT ONLY SUCH
WITNESS WAS BARRED FROM TESTIFYING,
INJECTED PERSONAL OPINION, AND THE
PROSECUTOR FURTHER STATED, DURING OPENING
STATEMENT, THAT HE REGRETTED THE JURY
COULD NOT HEAR FROM THE PSYCHOLOGIST
REGARDING JUSTIFICATION FOR THE DELAYED
OUTCRY AS SUCH PSYCHOLOGIST COULD HAVE
ENLIGHTENED THE JURY

Third Reason for Review ................................................................. 4

REVERSIBLE ERROR OCCURRED BECAUSE THE

v

PROSECUTING ATTORNEY, DURING VOIR DIRE,
IMPROPERLY ASKED COMMITMENT QUESTIONS TO
THE MEMBERS OF THE JURY PANEL

Fourth Reason for Review.................................................................... 4

APPELLANT'S TRIAL COUNSEL PROVIDED
INEFFECTIVE ASSISTANCE BY FAILING TO OBJECT
TO THE PROSECUTOR'S STATEMENTS, DURING VOIR
DIRE AS WELL AS OPENING STATEMENT, SET OUT IN
POINT OF ERROR NUMBER ONE

Argument and Authorities...................................................................... 5

Conclusion and Prayer.......................................................................... 28

Certificate of Service............................................................................ 29

Certificate of Compliance..................................................................... 30

Appendix - Opinion of the Eastland Court of Appeals............................ 31

# INDEX OF AUTHORITIES

CASES                                                                    PAGE

*Atkins v. State,* 951 S.W.2d 787 (Tex. Crim. App. 1997)                 22

*Berryhill v. State,* 501 S.W.2d 86 (Tex. Crim. App. 1973)               17

*Bone v. State,* 77 S.W.3d 828, 833 (Tex. Crim. App. 2002)               9, 24

*Boyde v. State,* 513 S.W.2d 588 (Tex. Crim. App. 1974)                  16

*Butler v. State,* 716 S.W.2d 4848 (Tex. Crim. App. 1986)                10

*Doherty v. State,* 781 S.W.2d 439
    (Tex. App. - Houston [1st Dist.] 1989, *no pet.*)   10

*Hall v. State,* 225 S.E.2d 705 (Ga. 1976)                               16

*Hilton v. State,* 870 S.W.2d 209
    (Tex. App. - Beaumont 1994 *no pet.*)                11

*Lydia v. State,* 109 S.W.3d 495 (Tex. Crim. App. 2003)                  13, 18, 19, 22

*Riascos v. State,* 792 S.W.2d 754
    (Tex. App. Houston [14th Dist.] 1990 pet. ref'd)      26

*Shanklin v. State,* 190 S.W.3d 154, 165
    (Tex. App. - Houston [1st Dist.] 2005), *pet. dism'd,*
    *improvidently granted,* 211 S.W.3d 315
    (Tex. Crim. App. 2007)                                9, 11, 25

*Smith v. State,* 894 S.W.2d 876
    (Tex. App. - Amarillo 1995, *pet. ref'd*)             11

*Standefer v. State,* 59 S.W.3d 177 (Tex. Crim. App. 2001)               18, 19, 22

*State v. Thomas*, 768 S.W.2d 335
(Tex. App. - Houston [14ᵗʰ Dist.] 1989, *no pet.*)        10

*Stearn v. State*, 437 S.W.2d 734 (Tex. Crim. App. 1972)        16

*Strickland v. Washington*, 466 U.S. 668, 687,
104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)        9, 24

*United States v. Novak*, 918 F.2d 107 (10 Cir. 1990)        15, 16

No. PD_____

TO THE COURT OF CRIMINAL APPEALS

OF THE STATE OF TEXAS


HECTOR MANUEL GONZALEZ, JR.                                    Appellant

v.

THE STATE OF TEXAS                                                      Appellee

＊ ＊ ＊ ＊ ＊

APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

＊ ＊ ＊ ＊ ＊

TO THE HONORABLE COURT OF CRIMINAL APPEALS:


COMES NOW, the Appellant, HECTOR MANUEL GONZALEZ, JR., by and

through his attorney of record, Thomas S. Morgan, and respectfully urges this Court

to grant discretionary review of the above named cause, pursuant to the rules of the

Court.


**STATEMENT REGARDING ORAL ARGUMENT**

Appellant does not request oral argument.


1

## STATEMENT OF THE CASE

Appellant was charged by indictment of aggravated sexual assault of a child (C.R. 6). To this allegation, Appellant pled "not guilty". Following a jury trial, the jury found Appellant "guilty" as alleged in the indictment as to Counts 1, 2 and 4, and "not guilty" as to Count 3 (C.R. 26-32). Appellant was sentenced by the trial court to thirty (30) years imprisonment, with each sentence to run concurrently (C.R. 37-39). A timely notice of appeal was filed by Appellant (C.R. 51, 58). In addition, a Motion for New Trial was filed (C.R. 54; 60-61), along with Defendant's First Supplemental Motion for New Trial (C.R. 66-71), which was denied without a hearing.

## STATEMENT OF PROCEDURAL HISTORY

In addition to the procedural history of the case set forth above in the "Statement of The Case", the Eastland Court of Appeals affirmed the conviction on direct appeal on December 31, 2014.

2

## FIRST GROUND FOR REVIEW

WHETHER APPELLANT RECEIVED THE INEFFECTIVE ASSISTANCE OF COUNSEL BECAUSE OF HIS TRIAL ATTORNEY'S FAILURE TO CALL CRITICAL FACT WITNESSES AT GUILT/INNOCENCE

## SECOND GROUND FOR REVIEW

WHETHER REVERSIBLE ERROR OCCURRED BECAUSE THE PROSECUTOR STATED, DURING VOIR DIRE, THAT A PSYCHOLOGIST, WHOM HE NAMED, WAS GOING TO TESTIFY REGARDING CHILD SEXUAL ABUSE VICTIMS GIVING DELAYED OUTCRIES, AND COMPOUNDED THE ERROR WHEN NOT ONLY SUCH WITNESS WAS BARRED FROM TESTIFYING, INJECTED PERSONAL OPINION, AND THE PROSECUTOR FURTHER STATED, DURING OPENING STATEMENT, THAT HE REGRETTED THE JURY COULD NOT HEAR FROM THE PSYCHOLOGIST REGARDING JUSTIFICATION FOR THE DELAYED OUTCRY AS SUCH PSYCHOLOGIST COULD HAVE ENLIGHTENED THE JURY

## THIRD GROUND FOR REVIEW

WHETHER REVERSIBLE ERROR OCCURRED BECAUSE THE PROSECUTING ATTORNEY, DURING VOIR DIRE, IMPROPERLY ASKED COMMITMENT QUESTIONS TO THE MEMBERS OF THE JURY PANEL

## FOURTH GROUND FOR REVIEW

WHETHER APPELLANT'S TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE BY FAILING TO OBJECT TO THE PROSECUTOR'S STATEMENTS, DURING VOIR DIRE AS WELL AS OPENING STATEMENT, SET OUT IN POINT OF ERROR NUMBER ONE

3

## FIRST REASON FOR REVIEW

APPELLANT RECEIVED THE INEFFECTIVE ASSISTANCE OF COUNSEL BECAUSE OF HIS TRIAL ATTORNEY'S FAILURE TO CALL CRITICAL FACT WITNESSES AT GUILT/INNOCENCE

## SECOND REASON FOR REVIEW

REVERSIBLE ERROR OCCURRED BECAUSE THE PROSECUTOR STATED, DURING VOIR DIRE, THAT A PSYCHOLOGIST, WHOM HE NAMED, WAS GOING TO TESTIFY REGARDING CHILD SEXUAL ABUSE VICTIMS GIVING DELAYED OUTCRIES, AND COMPOUNDED THE ERROR WHEN NOT ONLY SUCH WITNESS WAS BARRED FROM TESTIFYING, INJECTED PERSONAL OPINION, AND THE PROSECUTOR FURTHER STATED, DURING OPENING STATEMENT, THAT HE REGRETTED THE JURY COULD NOT HEAR FROM THE PSYCHOLOGIST REGARDING JUSTIFICATION FOR THE DELAYED OUTCRY AS SUCH PSYCHOLOGIST COULD HAVE ENLIGHTENED THE JURY

## THIRD REASON FOR REVIEW

REVERSIBLE ERROR OCCURRED BECAUSE THE PROSECUTING ATTORNEY, DURING VOIR DIRE, IMPROPERLY ASKED COMMITMENT QUESTIONS TO THE MEMBERS OF THE JURY PANEL

## FOURTH REASON FOR REVIEW

APPELLANT'S TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE BY FAILING TO OBJECT TO THE PROSECUTOR'S STATEMENTS, DURING VOIR DIRE AS WELL AS OPENING STATEMENT, SET OUT IN POINT OF ERROR NUMBER ONE

## ARGUMENT AND AUTHORITIES

## FIRST GROUND FOR REVIEW

APPELLANT RECEIVED THE INEFFECTIVE ASSISTANCE OF COUNSEL BECAUSE OF HIS TRIAL ATTORNEY'S FAILURE TO CALL CRITICAL FACT WITNESSES AT GUILT/INNOCENCE

In his first ground for review, Appellant contends, for the reasons set forth below, that Appellant received the ineffective assistance of counsel because of his trial attorney's failure to call critical fact witnesses at guilt/innocence.

The Defendant was found guilty of aggravated sexual assault of a child in Count I, Count II, and Count IV of the indictment. (C.R. 26-32).

The first prosecution witness was V.M. (R.R.5 102). On March 5, 2010 this witness visited Appellant, her step-sister Amanda, and her nephews (R.R.5 106). She testified "we did not fall asleep till like around 5:00 in the morning . . ." (R.R.5 104). This witness testified she was sleeping "in the living room on the floor on a mattress. And I woke up around 8:00 in the morning or so" (R.R.5 104). She stated that her two nephews and nieces Brianna and Sarah were present (R.R.5 105). In response to the State's question, "Okay, if I understand you correctly, ya'll were all sleeping on a mattress in the living room?" the witness answered "Me and Breana were. Sarah was sleeping on the couch" (R.R.5 105). The State asked, "Okay. All right. But ya'll were all in there together?" The witness answered "Yes" (R.R.5 105). This witness

then states she "woke up to find JR fingering me" (R.R.5 105). This witness testified she did not cry out for help because she "was afraid, and I didn't want anyone to hear" (R.R.5 106). She testified that after Appellant "fingered" her "he just left the room and went back to his room" (R.R.5 106).

She then testified she does not know the exact date the next incident took place (R.R.5 106). This witness stated that when the next incident happened they "were just talking normally. And he came in and stuck his finger in my vagina" (R.R.5 107). She then stated that her grandmother was there in the house, but she was in her room, and is in a wheelchair (R.R.5 107).

This witness then testified the third incident occurred in August of 2010 (R.R.5 108), when it was her, her step-dad, her mom and JR all moving furniture because she was switching rooms (R.R.5 108). She had taken a break and was in the living room when Appellant came in and stuck his fingers in her vagina then pulled her pants down and licked her vagina" (R.R.5 108). This witness testified this time it was only her, her grandmother, and the Appellant in the house at the time (R.R.5 108-109).

This witness then testified the fourth incident happened in November of 2010 (R.R.5 109-110). She testified her nieces had asked her to come over again, they were watching a movie in the girls room, and fell asleep on the bed (R.R.5 110). She stated this happened some time in the morning before Appellant had gone to work,

6

and "he came in there, and he stuck his fingers in my vagina" (R.R.5 110). This witness testified there were other people sleeping in the room when this incident occurred (R.R.5 110). She testified she did not cry out for help during this fourth incident (R.R.5 110).

Trial counsel for Appellant, at guilt/innocence, failed to call, as critical fact witnesses, Breauna Jaramillo and Sarah Jaramillo, who could have directly contradicted V.M., and raised reasonable doubt.

Appellant timely filed a supplemental motion for new trial on January 2, 2013 (C.R. 66). Attached to such motion for new trial were the affidavits of Breauna Jaramillo and Sarah Jaramillo.

In pertinent part, the affidavit of Breauna Jaramillo stated the following:

> "I, Breauna Jaramillo, was born on January 19, 1998, and I live in Big Lake, Texas.
> On numerous occasions my sister, Sarah Jaramillo, and I would spend weekends in the home of Hecor Gonzalez, Jr. and Amanda Chuvallier in Big Spring, Texas, including the year 2010. Sometimes V.M. would also be with us in the home of Hector Gonzalez, Jr. and Amanda Chuvallier.
> V.M. was always with myself and my sister, especially inside the home. At no time could Hector Gonzalez, Jr. had been alone with V.M.
> My sister, Sarah, and I would sleep in the living room and V.M. always slept in between us. Hector Gonzalez, Jr. never woke any of us up and never touched V.M. during any of these weekends.
> V.M. never told me, nor my sister, that Hector Gonzalez, Jr. ever touched her private area with his fingers not by any other means.
> V.M. was never afraid of Hector, and V.M. never told my sister or I to be on the look out of Hector Gonzalez, Jr. when we would go to sleep,

7

nor at any other time. V.M. never cried out that Hector Gonzalez, Jr. was touching her nor that he woke V.M. up from her sleep.

Nothing bad happened to V.M. all those weekends in 2010 when my sister and I were there with V.M.. V.M. never told me that she ever spent the night, in the home of Hector Gonzalez, Jr. without by sister and I being there also in the home. V.M. enjoyed being there with my sister and I.

I was not called as a defense witness to testify during the jury trial of Hector Gonzalez, Jr. in the first week of December 2012" (C.R. 68-69).

In pertinent part, the affidavit of Sarah Jaramillo stated the following:

"I, Sarah Jaramillo, was born on July 23, 2000, and I live in Big Lake, Texas.

On numerous occasions my sister, Breauna Jaramillo, and I would spend weekends in the home of Hecor Gonzalez, Jr. and Amanda Chuvallier in Big Spring, Texas, including the year 2010. Sometimes V.M. would also be with us in the home of Hector Gonzalez, Jr. and Amanda Chuvallier.

V.M. was always with myself and my sister, especially inside the home. At no time could Hector Gonzalez, Jr. had been alone with V.M..

My sister, Breauna, and I would sleep in the living room and V.M. always slept in between us. Hector Gonzalez, Jr. never woke any of us up and never touched V.M. during any of these weekends.

V.M. never told me, nor my sister, that Hector Gonzalez, Jr. ever touched her private area with his fingers not by any other means.

V.M. was never afraid of Hector, and V.M. never told my sister or I to be on the look out of Hector Gonzalez, Jr. when we would go to sleep, nor at any other time. V.M. never cried out that Hector Gonzalez, Jr. was touching her nor that he woke V.M. up from her sleep.

Nothing bad happened to V.M. all those weekends in 2010 when my sister and I were there with V.M.. V.M. never told me that she ever spent the night, in the home of Hector Gonzalez, Jr. without by sister and I being there also in the home. V.M. enjoyed being there with my sister and I.

I was not called as a defense witness to testify during the jury trial of Hector Gonzalez, Jr. in the first week of December 2012" (C.R. 70-71).

To succeed on an ineffective-assistance claim, a defendant must show that: (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

To show deficient performance, the defendant must prove, by a preponderance of the evidence, that his counsel's representation fell below the standard of professional norms. *Id.* at 687-88. The defendant bears the burden to prove ineffective assistance of counsel. *Id.* at 687. To demonstrate prejudice, the defendant must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694. Appellate review of trial counsel's representation is highly deferential and presumes that counsel's actions fell within the wide range of reasonable and professional assistance. *Id.* at 689. *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002).

Although choosing which witness to call is a strategic decision, the failure to investigate, interview, or call helpful witnesses has been deemed ineffective. *Shanklin v. State*, 190 S.W.3d 154, 165 (Tex. App. - Houston [1st Dist.] 2005), *pet. dism'd, improvidently granted*, 211 S.W.3d 315 (Tex. Crim. App. 2007).

Logic, reason, and common sense dictate that the failure to call these two defense witnesses, namely, Breauna Jaramillo and Sarah Jaramillo, who were present

inside the home and could have testified that no sexual abuse occurred at all, can raise a reasonable doubt. Indeed, the failure to call these two defense witnesses to testify at guilt/innocence does undermine confidence in the outcome.

A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Doherty v. State*, 781 S.W.2d 439 (Tex. App. - Houston [1st Dist.] 1989, *no pet.*).

An attorney has a professional duty to present all testimony, and other evidence, to support his client's defense. *State v. Thomas*, 768 S.W.2d 335 (Tex. App. - Houston [14th Dist.] 1989, *no pet.*).

Moreover, the failure of trial counsel to interview witnesses will be considered the ineffective assistance of counsel when inaction precludes the accused from advancing a viable defense. *State v. Thomas, supra*. Furthermore, defense counsel's failure to interview and call prospective witnesses, and cause the failure to advance a consent defense, defense counsel's inaction amounted to the ineffective assistance of counsel, thus requiring reversal of the conviction. *State v. Thomas, supra*.

Moreover, in *Butler v. State*, 716 S.W.2d 4848 (Tex. Crim. App. 1986), sworn testimony of witnesses that someone other than the defendant robbed the store, and that the defendant was somewhere else at the time of the robbery, none of which testimony was presented as a result a defense counsel's failure to properly investigate,

10

sufficiently undermined the court's confidence in the verdict so as to require the granting of a new trial, even though the credibility of these witnesses was subject to attack.

And, in the case of *Hilton v. State*, 870 S.W.2d 209 (Tex. App. - Beaumont 1994 *no pet.*), remand was required for a hearing, on the issue of whether the defendant was deprived of the effective assistance by counsel's failure to call witnesses, who would have testified to engaging in sexual conduct with the 15 year old victim prior to the date of the alleged sexual assault by the defendant, thus presenting the defense of promiscuity .

Additionally, reversible error occurred when trial counsel failed to interview witnesses to events resulting in charges of resisting arrest, which undermined confidence in the outcome of the trial. *Smith v. State*, 894 S.W.2d 876 (Tex. App. - Amarillo 1995, *pet. ref'd*).

Finally, trial counsel's performance constituted ineffective assistance requiring reversal when defense counsel failed to call witnesses, for the defense, at punishment. *Shanklin v. State*, 190 S.W.3d 154 (Tex. App. - Houston [1st Dist.] 2005 *pet. dism'd improvidently granted*, 211 S.W.3d 315 (Tex. Crim. App. 2007).

Consequently, for the reasons set forth above, the performance of the trial attorney of Appellant rendered the ineffective assistance of counsel, as set forth

11

above, at guilt innocence, by failing to call Breauna Jaramillo and Sarah Jaramillo. Thus, the conviction, as to each count, should be reversed, this Petition for Discretionary Review should be granted, and a new trial ordered.

## SECOND GROUND FOR REVIEW

REVERSIBLE ERROR OCCURRED BECAUSE THE PROSECUTOR STATED, DURING VOIR DIRE, THAT A PSYCHOLOGIST, WHOM HE NAMED, WAS GOING TO TESTIFY REGARDING CHILD SEXUAL ABUSE VICTIMS GIVING DELAYED OUTCRIES, AND COMPOUNDED THE ERROR WHEN NOT ONLY SUCH WITNESS WAS BARRED FROM TESTIFYING, INJECTED PERSONAL OPINION, AND THE PROSECUTOR FURTHER STATED, DURING OPENING STATEMENT, THAT HE REGRETTED THE JURY COULD NOT HEAR FROM THE PSYCHOLOGIST REGARDING JUSTIFICATION FOR THE DELAYED OUTCRY AS SUCH PSYCHOLOGIST COULD HAVE ENLIGHTENED THE JURY

In Appellant's Second Ground for Review, Appellant asserts, for the reasons set forth below, reversible error occurred because the prosecutor stated, during voir dire, that a psychologist, whom he named, was going to testify regarding child sexual abuse victims giving delayed outcries, and compounded the error when not only such witness was barred from testifying, injected personal opinion, and the prosecutor further stated, during opening statement, that he regretted the jury could not hear from the psychologist regarding justification for the delayed outcry as such psychologist could have enlightened the jury.

During voir dire, neither the State, nor the defense, is entitled to go into the testimony of specific witnesses. See *Lydia v. State*, 109 S.W.3d 495 (Tex. Crim. App. 2003).

During the State's voir dire, the prosecuting attorney stated the following:

13

"Mr. Orr:    Now, one of the things - - I tell you this for having tried these cases for a dozen years - - one of the things that crops up almost an overwhelming percentage of the time is delayed outcry; that is some period of time, some substantial period of time that elapses between the even taking place and the victim finally telling someone that it took place.

I believe in this case, since we have Dr. Matthews available, she will be able to enlighten you about why that takes place.

Ms. Norwood, why would a child - - and sometimes a young child, sometimes an older child - - not say anything about something like this, about being sexually abused?

Venireperson Norwood:         Fear or guilt.

Mr. Orr:    Okay Fair enough.

Do you think the idea that perhaps the victim feels some sort of loyalty or love toward the person who did this to them, could that play into it?

Venireperson Norwood:        Yes.

Mr. Orr:    Mr. Hooper, do you think the fact that, you know, maybe they're just flat scared might play into it?

Venireperson Hooper:          Yeah. Sometimes, yes.

Mr. Orr:    Mr. Tucker, do you think perhaps the fact that the victim is just afraid she won't be believed might play into it?

Venireperson Tucker:          yes, sir." (R.R.5 40-41)[1]

"Mr. Orr:    Let me try this: How many of you told a lie as a kid? Raise your hand. (Venirepersons raised their hands.)

All right. Leave your hands up. Now, if you told a lie about being sexually abused, leave your hand up? (Venirepersons lowered their hands.)" (R.R.5 42).

The trial court did, indeed, bar the testimony of Dr. Barbara Matthews, a

---

[1]Dr. Matthews never did testify, and was, indeed, barred from testifying. However, the trial judge stated he would allow such testimony during voir dire, regarding delayed outcries of child sexual abuse victims.

14

psychologist the State wanted to testify regarding delayed outcries of child sexual abuse victims (R.R.5 84-88). Despite knowing that Dr. Matthews could not testify, the prosecuting attorney stated the following during opening statement:

> "Unfortunately, some things have taken place outside your presence which will prevent you from hearing Dr. Matthews, and I regret that because I think she might have been able to enlighten you." (R.R.5 96-97).

Set out below are cases in which convictions were reversed due to prosecutors making statements to the jury which constituted prosecutorial misconduct because there was no such testimony.

A prosecutor's opening statement should be an objective summary of the evidence reasonably expected to be produced; this objective summary, however, does not allow the prosecution to refer to evidence unsupported at trial. *United States v. Novak*, 918 F.2d 107 (10 Cir. 1990).

During his opening statement, the prosecuting attorney still mentioned Dr. Barbara Matthews, the psychologist he referred to during voir dire, and how she would have enlightened the jury. At that moment the State knew Dr. Barbara Matthews was barred from testifying, and such reference to Dr. Barbara Matthews would be unsupported at trial.

To determine whether a prosecutor's failure to introduce facts at trial supporting statements made during opening statement should result in a mistrial, the

15

appellate court looks to whether the prosecutor acted in good faith, and at the impact such statements had on that particular trial. *United States v. Novak, supra.*

In *United States v. Novak, supra,* reversible error, indeed, did occur, because the prosecutor failed to substantiate factual statements made during opening argument and voir dire.

In *Stearn v. State,* 437 S.W.2d 734 (Tex. Crim. App. 1972), the prosecutor's remark, during opening statement at the guilt/innocence stage of the trial, namely, that "we couldn't bring you all the circumstances surrounding the arrest", was improper, as the jury could logically surmise there was inadmissable evidence that, if revealed, would show other acts committed by the defendant during the arrest they would justify a finding of guilty, and such remark was not harmless error.

In the case of *Boyde v. State,* 513 S.W.2d 588 (Tex. Crim. App. 1974), the prosecutor's attempts to circumvent the rulings of the trial court serve no purpose other than to inflame and prejudice the minds of the jurors, and such prosecutorial misconduct required reversible of the murder conviction.

The statement of the prosecutor, during opening statement in a burglary prosecution, that a police officer who could not be present to testify he had seen men coming out of a building, constituted reversible error. *Hall v. State,* 225 S.E.2d 705 (Ga. 1976).

Furthermore, in the case of *Berryhill v. State*, 501 S.W.2d 86 (Tex. Crim. App. 1973), where the prosecutor, on cross examination of the defendant, implied the existence of evidence which would support matters set out in hypothetical questions and where the prosecutor, during closing argument, stated he could not bring those matters to the jury and invited the jury to speculate at what those matters were, such argument constituted an improper representation that there was other evidence of the guilt of the defendant and was improper.

Consequently, for the reasons set forth above, the conviction should be reversed, this Petition for Discretionary Review should be granted, and a new trial ordered.[2]

---

[2]Additionally, the prosecutor elicited testimony that the Appellant was in jail (R.R.5 162) and that Appellant was not currently paying his child support (R.R.5 162), obviously eliciting such testimony to poison the jury against Appellant.

# THIRD GROUND FOR REVIEW

REVERSIBLE ERROR OCCURRED BECAUSE THE PROSECUTING ATTORNEY, DURING VOIR DIRE, IMPROPERLY ASKED COMMITMENT QUESTIONS TO THE MEMBERS OF THE JURY PANEL

In his third ground for review, Appellant contends, for the reasons set forth below, that reversible error did, indeed, occur because the prosecuting attorney, during voir dire, improperly asked commitment questions to the members of the jury panel.

An attorney cannot attempt to bind or commit a venire member to a verdict based on a hypothetical set of facts. See *Lydia v. State*, 109 S.W.3d 495 (Tex. Crim. App. 2003).

Questions that commit prospective jurors to a position, using a hypothetical or otherwise, are improper and serve no purpose other than to commit the jury to a specific set of facts before the presentation of any evidence at trial. *Standefer v. State*, 59 S.W.3d 177 (Tex. Crim. App. 2001); *Lydia v. State, supra.*

The test for determining whether a voir dire question calls for an improper commitment has two steps: (1) is the question a commitment question, and (2) does the question include only those facts that lead to a valid challenge for cause; if the answer to the first question is "yes" and answer to second question is "no", then question is improper. *Lydia v. State, supra.*

18

Commitment questions commit a prospective juror to resolve, or to refrain from resolving, an issue a certain way after learning a particular fact. *Lydia v. State, supra.*

Commitment questions are improper when (1) the law does not require a commitment, or (2) when the question adds facts beyond those necessary to establish a challenge for cause. *Standefer v. State, supra; Lydia v. State, supra.*

During the State's voir dire, the prosecuting attorney stated the following:

> "Mr. Orr:    Now, one of the things - - <u>I tell you this for having tried these cases for a dozen years - - one of the things that crops up almost an overwhelming percentage of the time is delayed outcry; that is some period of time, some substantial period of time that elapses between the even taking place and the victim finally telling someone that it took place.</u>
> I believe in this case, since we have Dr. Matthews available, she will be able to enlighten you about why that takes place.
> Ms. Norwood, why would a child - - and sometimes a young child, sometimes an older child - - not say anything about something like this, about being sexually abused?
>
> Venireperson Norwood:    Fear or guilt.
>
> Mr. Orr:    Okay Fair enough.
> Do you think the idea that perhaps the victim feels some sort of loyalty or love toward the person who did this to them, could that play into it?
>
> Venireperson Norwood:    Yes.
>
> Mr. Orr:    Mr. Hooper, do you think the fact that, you know, maybe they're just flat scared might play into it?
>
> Venireperson Hooper:    Yeah. Sometimes, yes.
>
> Mr. Orr:    Mr. Tucker, do you think perhaps the fact that the victim is just afraid she won't be believed might play into it?

19

Venireperson Tucker:             yes, sir." (R.R.5 40-41)[3]

"Mr. Orr:     Let me try this: How many of you told a lie as a kid? Raise your hand. (Venirepersons raised their hands.)
All right. Leave your hands up. Now, if you told a lie about being sexually abused, leave your hand up? (Venirepersons lowered their hands.)" (R.R.5 42).

During voir dire, the trial judge stated the following:

"She also - - and I run across cases where sometimes a child was so young they didn't know what was being done to them was wrong, or they were afraid to rock the boat; they might be taken away from the only family that they knew.
So there's a lot of reasons for this, and I'm going to let Dr. Matthews kind of explain those to you.
But then we get into the issue of credibility." (R.R.5 41-42).

The trial judge stated such immediately after the prosecutor stated the following:

"Mr. Orr:     Now, one of the things - - I tell you this for having tried these cases for a dozen years - - one of the things that crops up almost an overwhelming percentage of the time is delayed outcry; that is some period of time, some substantial period of time that elapses between the even taking place and the victim finally telling someone that it took place.
I believe in this case, since we have Dr. Matthews available, she will be able to enlighten you about why that takes place.
Ms. Norwood, why would a child - - and sometimes a young child, sometimes an older child - - not say anything about something like this, about being sexually abused?

---

[3]Dr. Matthews never did testify, and was, indeed, barred from testifying. However, the trial judge stated that he would allow such testimony during voir dire, regarding delayed outcries of child sexual abuse victims.

20

Venireperson Norwood:      Fear or guilt.

Mr. Orr:    Okay Fair enough.
Do you think the idea that perhaps the victim feels some sort of loyalty or love toward the person who did this to them, could that play into it?

Venireperson Norwood:      Yes.

Mr. Orr:    Mr. Hooper, do you think the fact that, you know, maybe they're just flat scared might play into it?

Venireperson Hooper:      Yeah. Sometimes, yes.

Mr. Orr:    Mr. Tucker, do you think perhaps the fact that the victim is just afraid she won't be believed might play into it?

Venireperson Tucker:      yes, sir." (R.R.5 40-41)[4]

By the trial judge justifying delayed outcry, the trial judge did, indeed, comment to the members of the jury panel, during voir dire, that he would definitely permit testimony regarding delayed outcry, strongly implying that evidence of delayed outcry, by a psychologist, gives credence to the prosecution's accusations in the indictment.

Not only did the prosecuting attorney inject personal opinion by stating he had tried these cases for a dozen years, but one of the things that crops up an overwhelming percentage of time is delayed outcry, during voir dire, but asked the members of the jury panel the following questions:

"Ms. Norwood, why would a child - - and sometimes a young child, sometimes an older child - - not say anything about something like this, about being sexually abused?

---

[4]Dr. Matthews never did testify, and was, indeed, barred from testifying. However, the trial judge stated that he would allow such testimony during voir dire, regarding delayed outcries of child sexual abuse victims.

Do you think the idea that perhaps the victim feels some sort of loyalty or love toward the person who did this to them, could that play into it?
Mr. Hooper, do you think the fact that, you know, maybe they're just flat scared might play into it?
Mr. Tucker, do you think perhaps the fact that the victim is just afraid she won't be believed might play into it?" (R.R.5 40-41).

Clearly the prosecuting attorney was committing these members of the jury panel to giving credence to what the alleged victim was about to testify to and commit, during voir dire, to believe this victim, in violation of the cases set forth below.

Indeed, the prosecutor was attempting to bind or commit these prospective jurors to a verdict based on a hypothetical set of facts.

In the case of *Standefer v. State*, 59 S.W.3d 177 (Tex. Crim. App. 2001), reversible error existed because a proposed voir dire question, seeking to discover whether any venireperson would have an automatic predisposition to find a person guilty because such person refused to take a breath test, in a driving while intoxicated case, was an improper commitment question.

Reversible error also occurred in *Lydia v. State*, 109 S.W.3d 495 (Tex. Crim. App. 2003), when the prosecuting attorney questioned members of the jury panel as to whether they would dismiss the testimony of a witness with a criminal history, such being an improper commitment question.

Moreover, in *Atkins v. State*, 951 S.W.2d 787 (Tex. Crim. App. 1997),

22

reversible error occurred when the prosecutor improperly asked all potential jurors whether they could convict a person arrested with a crack pipe that contained a measurable amount of crack cocaine, such question being an attempt to commit members of the jury trial to the specific facts of the case.

For the reasons set forth above, reversible error did occur. Accordingly, the conviction should be reversed, this Petition for Discretionary Review should be granted, and a new trial ordered.

## FOURTH GROUND FOR REVIEW

APPELLANT'S TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE BY FAILING TO OBJECT TO THE PROSECUTOR'S STATEMENTS, DURING VOIR DIRE AS WELL AS OPENING STATEMENT, SET OUT IN POINT OF ERROR NUMBER ONE

In his fourth ground for review, Appellant contends, for the reasons set forth below, that trial counsel committed the ineffective assistance of counsel.

To succeed on an ineffective-assistance claim, a defendant must show that: (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

To show deficient performance, the defendant must prove, by a preponderance of the evidence, that his counsel's representation fell below the standard of professional norms. *Id.* at 687-88. The defendant bears the burden to prove ineffective assistance of counsel. *Id.* at 687. To demonstrate prejudice, the defendant must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694. Appellate review of trial counsel's representation is highly deferential and presumes that counsel's actions fell within the wide range of reasonable and professional assistance. *Id.* at 689. *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002).

Although choosing which witness to call is a strategic decision, the failure to

24

investigate, interview, or call helpful witnesses has been deemed ineffective. *Shanklin v. State*, 190 S.W.3d 154, 165 (Tex. App. - Houston [1st Dist.] 2005), *pet. dism'd, improvidently granted*, 211 S.W.3d 315 (Tex. Crim. App. 2007).

The prosecuting attorney, during voir dire, in the case at bar, stated the following:

"Mr. Orr: Now, one of the things - - I tell you this for having tried these cases for a dozen years - - one of the things that crops up almost an overwhelming percentage of the time is delayed outcry; that is some period of time, some substantial period of time that elapses between the even taking place and the victim finally telling someone that it took place.
I believe in this case, since we have Dr. Matthews available, she will be able to enlighten you about why that takes place.
Ms. Norwood, why would a child - - and sometimes a young child, sometimes an older child - - not say anything about something like this, about being sexually abused?

Venireperson Norwood: Fear or guilt.

Mr. Orr: Okay Fair enough.
Do you think the idea that perhaps the victim feels some sort of loyalty or love toward the person who did this to them, could that play into it?

Venireperson Norwood: Yes.

Mr. Orr: Mr. Hooper, do you think the fact that, you know, maybe they're just flat scared might play into it?

Venireperson Hooper: Yeah. Sometimes, yes.

Mr. Orr: Mr. Tucker, do you think perhaps the fact that the victim is just afraid she won't be believed might play into it?

25

Venireperson Tucker:            yes, sir." (R.R.5 40-41)[5]

"Mr. Orr:    Let me try this: How many of you told a lie as a kid? Raise your hand. (Venirepersons raised their hands.)
All right. Leave your hands up. Now, if you told a lie about being sexually abused, leave your hand up? (Venirepersons lowered their hands.)" (R.R.5 42).

During opening statement the prosecutor stated the following: "

> "Unfortunately, some things have taken place outside your presence which will prevent you from hearing Dr. Matthews, and I regret that because I think she might have been able to enlighten you." (R.R.5 96-97).

Trial counsel of Appellant failed to object to the prosecutor's remarks above, at either voir dire or opening statement (R.R.5 40-42; 96-97).

In **Riascos v. State**, 792 S.W.2d 754 (Tex. App. Houston [14th Dist.] 1990 pet. ref'd), the defendant was denied the effective assistance of counsel by the failure to object to the prosecutor's improper comments, in a murder prosecution, referring to drug traffic, illegal Columbian aliens, and an extraneous offense; indeed, the prosecutor unduly inflamed the jury, to the prejudice of the defendant, by referring to his national origin, to a drug-related killing, when the evidence did not support such comment, and to an extraneous offense, and competent counsel would have objected immediately, obtain a jury instruction, and moved for mistrial on each

---

[5]Dr. Matthews never did testify, and was, indeed, barred from testifying. However, the trial judge stated that he would allow such testimony during voir dire, regarding delayed outcries of child sexual abuse victims.

occasion.

Thus, the conviction should be reversed, this Petition for Discretionary Review should be granted, and a new trial ordered.

## CONCLUSION AND PRAYER

WHEREFORE, Appellant prays that, for the reasons set forth above, that this Petition for Discretionary Review be, in all things, granted, and a new trial should be ordered. The Appellant prays for any and all other relief to which he may be justly entitled.

Respectfully submitted,

THOMAS S. MORGAN
1902 W. ILLINOIS
MIDLAND, TEXAS 79701
(432) 683-2703 - TELEPHONE
(432) 684-7314 - FAX
MANDYC@TOMSMORGAN.COM


By:_____
   THOMAS S. MORGAN
   STATE BAR NO. 14452500
   ATTORNEY FOR APPELLANT

28

## CERTIFICATE OF SERVICE

I, Thomas S. Morgan, hereby certify that on the __20th__ day of January, 2015, a true and correct copy of the foregoing Appellant's Petition For Discretionary Review was hand delivered to the District Attorney, Midland County Courthouse, Second Floor, Midland, Texas 79701; and, was mailed by certified mail, return receipt requested, to the State Prosecuting Attorney, P. O. Box 12405, Capitol Station, Austin, Texas 78711.


_____
THOMAS S. MORGAN

## CERTIFICATE OF COMPLIANCE

Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

1. This petition complies with the type-volume limitation of TEX. R. APP. P. 9.4 because:

   this petition contains ___5,119___ words.

2. This petition complies with the typeface requirements of TEX. R. APP. P. 9.4 and the type style requirements of TEX. R. APP. P. 9.4 because:

   this petition has been prepared in a proportionally spaced typeface using __ COREL WORDPERFECT X4 in 14, TIMES NEW ROMAN .

   _____
   Attorney for Appellant

30

Opinion filed December 31, 2014



In The

# Eleventh Court of Appeals

_____

No. 11-12-00360-CR
_____

## HECTOR MANUEL GONZALEZ, JR., Appellant

## V.

## THE STATE OF TEXAS, Appellee

On Appeal from the 118th District Court

Howard County, Texas

Trial Court Cause No. 13447

## MEMORANDUM OPINION

The jury convicted Hector Manuel Gonzalez, Jr. of three counts of aggravated sexual assault of a child and assessed punishment as to each count at confinement for thirty years and a fine of $10,000. The trial court sentenced Appellant accordingly and ordered that the sentences were to run concurrently. Appellant contends in five issues that he is entitled to a new trial because of

31

improper comments and improper commitment questions during voir dire and because he received ineffective assistance of counsel. We modify each of the three judgments and affirm as modified.

Appellant was charged by indictment with four counts of aggravated sexual assault of a child. *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(B) (West Supp. 2014). The allegations as to counts one, two, and four contain references to different dates for each allegation of aggravated sexual assault: the offense in count one occurred on or about March 1, 2010; the offense in count two occurred on or about June 30, 2010; and the offense in count four occurred on or about November 24, 2010. In count three, the State alleged that Appellant intentionally or knowingly caused his mouth to contact the sexual organ of the victim, a child under the age of fourteen.

Teri, the victim's mother, testified as an outcry witness in this case. Teri is married to Eddie, and Eddie's daughter Amanda is the mother of Appellant's two children. Amanda and Appellant began living together in July 2008 but were never formally married. The context of the conversation during which the victim made the outcry is not exactly clear, but Teri was discussing a recent situation involving the victim when the victim told her about the assaults. Teri was telling the victim that, "if something happened to you, I cannot help you if I'm not aware of what's going on," and tears were "rolling down" the victim's face. "[K]nowing that [she] must have hit a nerve," Teri testified that she continued telling the victim to open up and talk to her if something was wrong. The victim told Teri that "JR touched [her]." The family called Appellant "JR." Teri told the victim to write down what had happened in her own words.

Teri and Eddie told Amanda about the victim's claims against Appellant, and then Teri and Eddie confronted Appellant in Amanda's presence. Teri testified that Appellant did not make eye contact, express any emotion, or directly deny the

accusations. According to Teri, Appellant said that he wrestled with the victim and the other girls. Teri admitted that she had not given much thought to Appellant wrestling with the girls when she had observed this in the past. Teri testified, however, about times when the victim would not want to go to family events after learning that Appellant would be there, but Teri said that the victim would only say that "the guys" picked on her and never mentioned anything about Appellant specifically.

The victim was fifteen years old at the time of trial. She testified about two assaults that occurred at her home and two assaults that occurred when she stayed overnight at Appellant's house. The victim stayed overnight at Appellant's home when Appellant's nieces, B.J. and S.J., who were similar in age to the victim, came to visit. On one occasion in March 2010, the girls rented a movie and stayed awake until 5 a.m. The victim and B.J. slept on a mattress in the living room, and S.J. slept on the couch. The victim awoke around 8 a.m., and Appellant had his fingers inside her vagina. The victim testified that she was scared, nervous, and shocked. She said that Appellant eventually just left the living room and went back to his bedroom. B.J. and S.J. slept through the assault. The victim testified that she did not cry out during the assault because she was afraid, and she also said that she did not "want anyone to know."

The second and third assaults occurred at the victim's home where she lived with Teri and Eddie. Teri's mother, who was in a wheelchair, lived with them, and Teri took care of her mother full time. The second assault occurred in the victim's bedroom. According to the victim, she was sitting on her bed, and when Appellant came into her room, they were talking normally until Appellant "stuck his finger in [her] vagina." The victim testified that her grandmother was in her own bedroom at the time. The victim said that she did not tell anyone because she was scared. In August 2010, Appellant was helping move furniture at the victim's home

because the victim was changing bedrooms. The victim said that she took a break and was watching television when Appellant came into the living room and started watching television with her. The victim testified that Appellant "stuck his fingers in [her] vagina," pulled her pants down, and "licked [her] vagina." The victim did not cry out, but she tried to push Appellant away; Appellant did not stop.

The fourth assault occurred in November 2010. B.J. and S.J. invited the victim to spend the night at Appellant's house while they were in town visiting. The girls watched a movie, and all three girls slept in the same bed that night. Early the next morning before Appellant went to work, he came into the bedroom where the girls were sleeping, and the victim said that he again "stuck his fingers in [her] vagina." The victim did not cry out because she "didn't want anyone to hear."

It was a year later that the victim eventually told her mother about the assaults. At trial, the victim said, "The reason it took me so long to tell my mom is because I was just - - I didn't know how to explain it to her, and I didn't want to because I knew that if I did, then it would really mess things up in our family" and "would cause a lot of problems." The victim's blended family was very close and spent a lot of time together, including family dinners, church, and shopping. The victim testified that she tried not to tell her mother but that she "finally came out and told her." The victim said, "Going through this was a really hard thing for me. It put me under a lot of stress and caused a lot of family problems between my stepdad's new family." She said that "most of [Eddie's] family doesn't really like [her] anymore."

Appellant denied committing any of the assaults and maintained that it was difficult to explain what happened on specific occasions after more than a year and without specific details about when the alleged assaults occurred. Contrary to Teri's testimony, Appellant testified that he denied the assaults when Teri and

Eddie initially confronted him. Appellant said that he was never alone with the victim at her house because the victim's grandmother was always present and in the room, but Appellant admitted on cross-examination that there were times that the victim's grandmother was present but in another room. Amanda testified that the victim invited herself over every time B.J. and S.J. came to visit and that the victim was never alone with Appellant during those visits because Amanda was always present. Amanda admitted, however, that Appellant sometimes woke up for work earlier than she did, and she agreed that "the fact that [she was] physically in the house doesn't necessarily mean that [she was] present in the room where these events would have taken place."

In his second and third issues, Appellant complains of error that he alleges occurred during the questioning of prospective jurors. In Issue Two, Appellant argues that the prosecutor made an improper comment during voir dire when he told the panel that Dr. Matthews would testify and explain why some children delay in making an outcry statement. In Issue Three, Appellant contends that the trial court made a similar comment about Dr. Matthews during voir dire that was also improper.

We have reviewed a corrected reporter's record filed in this court after the case became at issue. From that review, it is apparent that the statement about which Appellant complains in his third issue was actually made by the prosecutor. Accordingly, we review Appellant's Issues Two and Three both as complaints of alleged improper comments made by the State during voir dire.

To preserve such an issue for review on appeal, a party must object to improper comments made by the State during voir dire. *See* TEX. R. APP. P. 33.1(a). Appellant did not object to either statement. Thus, the issue has not been preserved for our review. Issues Two and Three are overruled.

In his fourth issue, Appellant complains that the State was permitted to ask improper commitment questions during voir dire. Questions during voir dire are proper if the answers reveal a juror's view on an issue applicable to the case. *Barajas v. State*, 93 S.W.3d 36, 38 (Tex. Crim. App. 2002). Because a trial court has broad discretion over the process of selecting a jury, an appellate court should not disturb a trial court's ruling made during voir dire absent an abuse of discretion. *Id.*

A party may not bind a potential juror to a verdict based on hypothetical facts. *Lydia v. State*, 109 S.W.3d 495, 497 (Tex. Crim. App. 2003). "[A] question is a commitment question if one or more of the possible answers is that the prospective juror would resolve or refrain from resolving an issue in the case on the basis of one or more facts contained in the question." *Standefer v. State*, 59 S.W.3d 177, 180 (Tex. Crim. App. 2001). A commitment question is improper only when the law does not require such a commitment and when the question includes facts beyond those necessary to support a challenge for cause. *Id.* at 181–82. Thus, whether a party asked an improper commitment question is a two-step inquiry: (1) Is the question a commitment question, and if so, (2) Does the question lead to a valid challenge for cause and include only the facts necessary to determine whether a panelist is challengeable for cause? *Id.* at 182–83.

During voir dire, after it discussed delayed outcries, the State informed the venire panel that Dr. Matthews would "be able to enlighten you about why that takes place," and the following exchange occurred between the State and Veniremembers Norwood, Hooper, and Tucker:

> [PROSECUTOR]: Ms. Norwood, why would a child - - and sometimes a young child, sometimes an older child - - not say anything about something like this, about being sexually abused?

VENIREPERSON NORWOOD: Fear or guilt.

[PROSECUTOR]: Okay. Fair enough. Do you think the idea that perhaps the victim feels some sort of loyalty or love toward the person who did this to them, could that play into it?

VENIREPERSON NORWOOD: Yes.

[PROSECUTOR]: Mr. Hooper, do you think the fact that, you know, maybe they're just flat scared might play into it?

VENIREPERSON HOOPER: Yeah. Sometimes, yes.

[PROSECUTOR]: Mr. Tucker, do you think perhaps the fact that the victim is just afraid she won't be believed might play into it?

VENIREPERSON TUCKER: Yes, sir.

Appellant did not object to any of the questions that he now claims are improper commitment questions. Therefore, Appellant failed to preserve this issue for our review. However, even if preserved, we must conclude that Appellant's contention fails on the first prong of the inquiry because these are not commitment questions. Because the State did not ask the veniremembers to commit to a verdict or to refrain from resolving an issue, the trial court did not err when it permitted the State to question the members of the venire about reasons for delayed outcries. Appellant's fourth issue is overruled.

In his first and fifth issues, Appellant argues that his trial counsel was ineffective because he failed to (1) call Appellant's nieces to testify, (2) object to the prosecutor's improper comments during voir dire, and (3) object to improper commitment questions during voir dire. The United States Constitution and the Texas Constitution guarantee individuals the right to assistance of counsel in criminal prosecutions. U.S. CONST. amend. VI; TEX. CONST. art. I, § 10. The right to counsel means more than simply having a lawyer present; it requires the right to

effective assistance. *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011). A defendant does not have a right to errorless counsel but, rather, to objectively reasonable representation. *Id.* We review the totality of the representation and the circumstances of each case without the benefit of hindsight. *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006).

To determine whether Appellant's trial counsel rendered ineffective assistance at trial, we look at whether Appellant has shown that his counsel's representation fell below an objective standard of reasonableness and, if so, whether Appellant has shown that there is a reasonable probability that the result would have been different but for trial counsel's errors. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Hernandez v. State*, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986). There is a strong presumption that trial counsel was competent. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). Counsel's deficiency must be affirmatively demonstrated in the record because the court must not engage in retrospective speculation. *Id.*

"It is not sufficient that the appellant show, with the benefit of hindsight, that his counsel's actions or omissions during trial were merely of questionable competence." *Mata v. State*, 226 S.W.3d 425, 430 (Tex. Crim. App. 2007). "When such direct evidence is not available, we will assume that counsel had a strategy if any reasonably sound strategic motivation can be imagined." *Lopez*, 343 S.W.3d at 143. However, we cannot assume that conduct was based on strategy if "the conduct was so outrageous that no competent attorney would have engaged in it." *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001).

We first address Appellant's contention that counsel was ineffective for failing to call Appellant's two nieces to testify. Appellant's appellate attorney filed a motion for new trial and attached the affidavits from Appellant's two nieces who were willing to testify on his behalf. The assertions in the affidavits are identical

except for the names, and each niece represented that she would have testified that they spent time in Appellant's home in 2010; that the victim slept between them in the living room when all three girls were there; that the victim never told them about the abuse; and that, during the weekend visits, Appellant never woke up any of the girls and never touched the victim. Both nieces asserted that they were never called to testify.

The State argues that Appellant has failed to show that trial counsel's decision not to call the witnesses was not sound trial strategy because the affidavits "amount to nothing." According to the State, "the assumption is that such testimony would have turned the tide in the Appellant's favor when such is not demonstrated in the record."

Whether to present a witness is a decision that is largely a matter of trial strategy. *Rodd v. State*, 886 S.W.2d 381, 384 (Tex. App.—Houston [1st Dist.] 1994 pet. ref'd). The failure to uncover and present mitigating evidence, however, cannot be justified as a tactical decision when defense counsel has failed to seek out and interview potential witnesses. *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (focusing not on whether performance was deficient by failing to present mitigating evidence but rather on the adequacy of the investigation that informed the decision not to present evidence); *Rivera v. State*, 123 S.W.3d 21, 30–31 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd).

There is nothing in the record to indicate that counsel failed to investigate or that counsel was not aware of these potential witnesses. Moreover, the facts alleged in their affidavits, in large part, were consistent with the victim's testimony, and it would be reasonable to conclude that their testimony would not have added anything to Appellant's case. The allegations that the victim never told Appellant's nieces about the abuse, never told them "to be on the lookout" for Appellant, and never told them that Appellant woke up the victim from her sleep

are not different than the evidence that is in the record because the victim testified that she never told the girls about the abuse. Similarly, the victim testified that all three girls slept together when they had sleepovers, and both Amanda and Appellant testified that Appellant was not alone with the victim at the time of the incidents. The remaining allegations include statements that could not be within the personal knowledge of the witnesses—for example, Appellant "never woke any of us up and never touched [the victim] during any of these weekends"; the victim "never cried out that [Appellant] was touching her"; and "[n]othing bad happened to [the victim] all those weekends in 2010 when my sister and I were there with [the victim]." After reviewing the entire record and comparing the evidence that Appellant claims his trial counsel should have offered, we cannot hold that counsel could not have had a plausible trial strategy that would support his decision not to call Appellant's nieces to testify. *See Garcia*, 57 S.W.3d at 440.

We next assess Appellant's contention that counsel was ineffective because he failed to object during voir dire to the statements and questions complained of in Issues Two, Three, and Four. Having concluded in Issue Four that the complained-of questions were not improper commitment questions, we cannot conclude that counsel was ineffective for not objecting.

Appellant also contends that counsel should have objected to the State's comments during voir dire, which were challenged in Issues Two and Three, that Dr. Matthews would be available to enlighten the jury on the issue of why delayed outcry statements occur. Appellant argues that the statements were objectionable because "neither the State, nor the defense, is entitled to go into the testimony of specific witnesses." Assuming without deciding that the prosecutor's statements were objectionable, Appellant has not made any showing as to how he was prejudiced by counsel's failure to object. Appellant has failed to show a reasonable probability that the result of this proceeding would have been different

had trial counsel objected to the prosecutor's statements during voir dire. *See Thompson*, 9 S.W.3d at 813.

After reviewing Appellant's claims and reviewing the record, we conclude that Appellant has failed to show that he received ineffective assistance of counsel at trial. Trial counsel conducted voir dire; successfully challenged the testimony of Dr. Matthews, which was excluded because the State failed to provide the requisite notice; effectively cross-examined witnesses; made appropriate objections during trial; and made opening statements and closing arguments to the jury. Because Appellant has failed to show that his trial counsel's performance was deficient and that there is a reasonable probability that the result of the proceedings would have been different, we overrule Appellant's first and fifth issues.

Appellant was found guilty of the offenses alleged in counts one, two, and four, but the judgments reflect convictions for counts one, three, and four. On our own motion under the authority provided in Rule 43.2(b) of the Texas Rules of Appellate Procedure, we modify the judgments to accurately reflect the sentences pronounced by the trial court. We modify the judgment of conviction in count two to reflect that the conviction is for count two rather than count three. Additionally, we modify the judgment in count one to reflect that the sentence in count one is to run concurrently with the sentences in counts two and four. Further, we modify the judgment in count four to reflect that the sentence in count four is to run concurrently with the sentences in counts one and two. *See* TEX. R. APP. P. 43.2(b); *French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992).

As modified, we affirm the judgments of the trial court.


JIM R. WRIGHT
CHIEF JUSTICE


December 31, 2014

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.